UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

JOHN K. SHERWOOD
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

FILED
JAMES J. WALDRON, CLERK
AUG. 19, 2015
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner
JUDICIAL ASSISTANT

**NOT FOR PUBLICATION**

August 19, 2015

Joseph Shapiro, Esq.
Middlebrooks Shapiro, P.C.
841 Mountain Avenue, First Floor
Springfield, New Jersey 07081

Barbara K. Hager, Esquire
Reed Smith LLP
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, Pennsylvania 19103

Re: **Hartman v. Wells Fargo Bank, N.A. et al.**
**Adversary Proceeding No. 15-01968 (JKS)**

Dear Counsel:

Before the Court is the motion (the "Motion") of Wells Fargo Bank, N.A., d/b/a/ Americas Servicing Company ("Wells Fargo"), and U.S. Bank, N.A. as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-through Certificates, Series 2005-EMX5 ("U.S. Bank," together with Wells Fargo, collectively, the "Defendants") to dismiss the adversary complaint (the "Complaint") filed by James Hartman (the "Plaintiff" or the "Debtor"). The Complaint seeks declaratory and equitable relief enjoining the Defendants from

foreclosing on a mortgage on the Plaintiff's real property located at 38 Rose Terrace, Chatham, New Jersey, 07928 (the "Property") because the statute of limitations for commencing a foreclosure action pursuant to section 2A:50-56.1(a) of the New Jersey Fair Foreclosure Act (the "Fair Foreclosure Act") has allegedly expired. *See* N.J.S.A. § 2A:50-56.1. The Complaint also seeks monetary damages for alleged negligent misrepresentations made by Wells Fargo in connection with applications for loan modifications made by the Plaintiff and his wife. For the reasons below, the Court will grant the Defendants' Motion.

## I. Factual and Procedural History

On September 21, 2005, the Debtor and his wife, Amanda Johns (collectively, the "Mortgagors"), executed a promissory note in the amount of $697,000 (the "Note") in favor of Residential Home Funding Corp. ("Residential Funding") in exchange for a non-purchase money mortgage loan (the "Loan") in the same amount. (*See* Compl., Ex. A, ECF No. 2-1). The maturity date set forth in the Note is October 1, 2035. (*Id.*). As security for the Note, the Mortgagors granted a mortgage (the "Mortgage") on the Property, also dated September 21, 2005, in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Residential Funding. (*Id.*) Subsequently, several allonges were executed, and the Note was ultimately directed to be paid to the order of U.S. Bank.[1] (Compl. at ¶ 11).

In March 2008, the Mortgagors entered into a loan modification with Wells Fargo, as servicer of the Loan for U.S. Bank, to recapitalize $16,074.57 in interest (the "2008 Loan

[1] An undated allonge to the Note was executed by Residential Funding directing the Note to be paid to the order of Mortgage Lenders Network USA, Inc. ("MLN"), and then by MLN directing the Note to be paid to the order of the EMAX Financial Group, LLC ("EMAX"). An additional allonge, executed by Residential Funding and EMAX and dated October 25, 2005, directs the Note to be paid to the order of U.S. Bank. (Compl. at ¶ 11).

Modification"). (*Id.* at ¶ 12). The Mortgagors defaulted on the 2008 Loan Modification shortly thereafter, and on October 5, 2008, Wells Fargo issued a Notice of Intention to Foreclose (the "Acceleration Notice"). (*Id.* at ¶ 13; Ex. B). On November 26, 2008, U.S. Bank filed a mortgage foreclosure complaint against the Mortgagors in the Superior Court of New Jersey, Chancery Division, Morris County, captioned: *U.S. Bank National Association as Trustee v. James Hartman, et al.*, Docket No. F-46930-08 (the "Foreclosure Action"). (*Id.* at ¶ 15). The Mortgagors did not file an answer to the Foreclosure Action.

The Mortgagors filed a voluntary joint chapter 13 bankruptcy petition on December 16, 2008. (*See In re James Hartman and Amanda Johns* ("2008 Bankruptcy Case"), No. 08-34985, ECF No. 1). Approximately a year later, on December 23, 2009, the Mortgagors submitted a loan modification application (the "2009 Loan Modification") to Wells Fargo. (Compl. at ¶ 17). Wells Fargo moved for relief from the automatic stay on January 11, 2010. (*Id.* at ¶ 20); (2008 Bankruptcy Case, ECF No. 56). On February 18, 2010, the Mortgagors filed a modified chapter 13 plan that proposed to cure all arrears on the Loan through the 2009 Loan Modification. (Compl. at ¶¶ 17, 20). The Court confirmed the modified plan on March 30, 2010 and the confirmation order gave the Mortgagors six months to complete the 2009 Loan Modification. (2008 Bankruptcy Case, ECF No. 63). Following a hearing on May 24, 2010, the Court entered an order granting Wells Fargo relief from the stay. (*Id.*, ECF No. 65). Upon entry of the order vacating the automatic stay, the Foreclosure Action resumed in state court and the parties entered into foreclosure mediation. (Compl. at ¶¶ 24-26). On December 28, 2010, Wells Fargo issued a letter denying the 2009 Loan Modification, which stated, "Plan is Being Removed due to broken plan. No plan payment was made." (*Id.*, Ex. F).

In February 2011, the Mortgagors submitted a new application for a loan modification to Wells Fargo (the "2011 Loan Modification"). (*Id.* at ¶ 30). Wells Fargo denied the 2011 Loan Modification on May 25, 2011, stating that the Mortgagors failed to "meet investor criteria for loan modification. Investor guidelines allow capitalization only once for the life of the loan. Loan was previously modified." (*Id.*, Ex. I).

On October 11, 2013, the state court dismissed the Foreclosure Action for lack of prosecution. (*Id.* at ¶ 34). On March 3, 2014, the Mortgagors completed their 2008 chapter 13 plan and received a discharge. (*Id.* at ¶ 36). Wells Fargo moved to reinstate the Foreclosure Action in July 2014 and the case was reinstated on the condition that it would remain dismissed if the Defendants failed to file a motion for final judgment by December 12, 2014. (*Id.* at ¶ 37). After the deadline passed without the filing of a motion for final judgment, Wells Fargo moved for an extension of time to submit the motion. (*Id.* at ¶¶ 39, 41). On January 22, 2015, the Debtor filed the instant chapter 13 bankruptcy petition. (*In re James Hartman* ("2015 Bankruptcy Case"), No. 15-11180-JKS, ECF No. 1). U.S. Bank filed a proof of claim in the amount of $992,387.40 on May 5, 2015. (*Id.*, Claim No. 6-1).

On June 3, 2015, the Debtor filed the Complaint. Count One seeks declaratory and injunctive relief prohibiting the Defendants from taking any action to foreclose on the Property because such claims are time barred pursuant to N.J.S.A. § 2A:50-56.1(a). Count Two asserts that the Defendants negligently made misrepresentations that the Mortgagors were eligible for the 2009 Loan Modification and 2011 Loan Modification despite the fact that they did not qualify for a modification because they received the 2008 Loan Modification.

## II. Analysis

### A. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, provides that a motion to dismiss may be granted if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. A complaint is sufficiently pled as long as it provides the opposing party with notice of claims against it and includes "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations and quotations omitted). However, factual allegations "must be enough to raise the right to relief above the speculative level" and "should 'plausibly suggest[ ]' that the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is implausible in the context of a Rule 12(b)(6) motion to dismiss if its allegations "are too conclusory or the complaint fails to include essential facts about the elements of a claim." *In re Neale*, 440 B.R. 510, 518 (Bankr. W.D. Wis. 2010).

### B. Count One: Statute of Limitations Relative to Foreclosure Proceedings

Count One of the Complaint seeks declaratory and injunctive relief barring the Defendants from taking action to foreclose on the Property because the six-year statute of limitations for commencing a mortgage foreclosure under section 2A:50-56.1(a) of the Fair

Foreclosure Act allegedly expired on or about October 5, 2014. *See* N.J.S.A. § 2A:50-56.1(a). In analyzing the limitations periods set forth in N.J.S.A. § 2A:50-56.1(a), the Court must begin with the plain language of the statute. *See U.S. Bank Nat. Ass'n v. Guillaume*, 209 N.J. 449, 471, 38 A.3d 570, 582 (2012) (applicable principles of statutory construction require that the "inquiry begins with the literal language of the statute."); N.J.S.A. § 1:1-1 ("[w]ords and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning.").

N.J.S.A. § 2A:50-56.1 ("Statute of limitations relative to foreclosure proceedings") provides:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
> a. *Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note*, bond, or other obligation secured by the mortgage, whether the date is itself set forth or may be calculated from information contained in the mortgage or note, bond, or other obligation, except that if the date fixed for the making of the last payment or the maturity date has been extended by a written instrument, the action to foreclose shall not be commenced after six years from the extended date under the terms of the written instrument;
>
> b. Thirty-six years from the date of recording of the mortgage, or, if the mortgage is not recorded, 36 years from the date of execution, so long as the mortgage itself does not provide for a period of repayment in excess of 30 years; or
>
> c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage, except that if the date to perform any of the obligations or covenants has been extended by a written instrument or payment on account has been made, the

> action to foreclose shall not be commenced after 20 years from the date on which the default or payment on account thereof occurred under the terms of the written instrument.

N.J.S.A. § 2A:50-56.1 (emphasis added).

Here, the Mortgagors executed the Note and Mortgage on September 21, 2005 and the maturity date of the Note is October 1, 2035. Applying the plain language of the limitations period described in subsection (a), an action to foreclose on the Mortgage is timely as long as it is commenced no later than six years from the October 5, 2035 maturity date set forth in the Note (*i.e.*, on or about October 5, 2041). *See* N.J.S.A. § 2A:50-56.1(a). However, the Plaintiff asserts that the limitations period under subsection (a) expired on or about October 5, 2014. The Plaintiff suggests that the maturity date set forth in the Mortgage was changed to October 5, 2008, the date on which Wells Fargo issued the Acceleration Notice that declared the full amount of the Loan due,[2] and that any action to commence a foreclosure against the Property following October 5, 2014 would be time barred.

This interpretation of the applicable limitations period is contrary to the plain language and legislative history of the statute. While courts have held in other contexts that the maturity date of a note may be advanced by virtue of acceleration,[3] section 2A:50-56.1 does not address the effect of acceleration and "acceleration" is not defined elsewhere in the Fair Foreclosure

---

[2] The Plaintiff states that the statute of limitations has run because "[o]n or about October 5, 2014, more than six (6) years had passed since ASC accelerated its Mortgage Loan on or about October 5, 2008." (Pl.'s Opp'n to Mot. to Dismiss at 9, ECF No. 8).

[3] *See, e.g., Westmark Commercial Mortgage Fund IV v. Teenform Associates, L.P.*, 362 N.J. Super. 336, 345, 827 A.2d 1154, 1159 (App. Div. 2003) (holding that mortgagee loses its right to a prepayment premium upon acceleration of the note because acceleration "advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity") (citing *In re LHD Realty Corp.*, 726 *F.*2d 327, 330-31 (7th Cir. 1984)) (internal quotations omitted).

Act.[4] Since the limitations period described in subsection (a) is unambiguously defined as six years from "the maturity date set forth in the mortgage or the note," the Court sees no reason why acceleration would change the commencement of the limitations period from that date.

Also, as noted by the Defendants, the statute's silence with respect to the effect of acceleration on the mortgage foreclosure limitations period is particularly significant since New Jersey's statute of limitations for negotiable instruments, N.J.S.A. § 12A:3-118(a), specifically addresses acceleration. N.J.S.A. § 12A:3-118(a) provides:

> An action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

N.J.S.A. § 12A:3-118(a). Thus, there is no doubt that the New Jersey legislature knows how to clearly draft a statute that provides for the commencement of a statute of limitations from an accelerated due date. The fact that the legislature did not include such language when it enacted N.J.S.A. § 2A:50-56.1 is evidence that it did not intend for the six-year limitations period to commence upon acceleration of a mortgage.

In addition, the legislative history of the Fair Foreclosure Act does not support the Plaintiff's position. Prior to the enactment of N.J.S.A. § 2A:50-56.1(a), New Jersey did not have a statute of limitations for mortgage foreclosure actions and courts applied a 20-year limitations period based on the common law adverse possession period. Section 2A:50-56.1 of

[4] Nor does the Acceleration Notice reference the maturity date in the Note, instead merely informing the Mortgagors that if they did not cure default by November 4, 2008 Wells Fargo "may" commence a foreclosure action against them. (Compl., Ex. B). The provision of the Mortgage pertaining to acceleration also does not indicate that acceleration advances the maturity date, providing, in pertinent part, that "[i]f the default is not cured on or before the date specified in the [Acceleration Notice], Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." (*Id.*, Ex. A at ¶ 22).

the Fair Foreclosure Act was enacted to codify the New Jersey Appellate Division's holding in *Security National Partners v. Mahler*, 336 N.J. Super. 101, 104, 763 A.2d 804, 806 (App. Div. 2000), that a 20-year limitations period limits a mortgagee's right to commence a foreclosure action, running from the date of the debtor's default.[5] Subsection (c) accomplishes this purpose by establishing a limitations period of "[t]wenty years from the date on which the debtor defaulted" on the mortgage. N.J.S.A. § 2A:50-56.1(c). If the acceleration of a note upon default advanced the maturity date to the date of default (or the date of the issuance of an acceleration notice), this would render the 20-year limitations period in subsection (c) meaningless. *See Specialized Loan Serving, LLC v. Washington*, No. 2:14-cv-8063-SDW (D.N.J. Aug. 12, 2015) ("If this Court were to accept Appellee's argument that the maturity date was accelerated to [the date of default] (at which point all payments would be due), there would be no functional purpose of section (c) of the N.J.S.A. § 2A:50-56.1, which provides for a twenty-year statute of limitations for mortgage payment cases."); *Pennymac Corp. v. Crystal*, No. F-31289-14 (N.J. Super. Ct. Ch. Div. May 8, 2015). This result would also be contrary to *Mahler*, which held that the "claim that the foreclosure suit is governed by that same six-year statute of limitations

---

[5] *See* Assembly Financial Institutions and Insurance Committee Statement, Senate, No. 250-L. 2009, c. 105:

> The bill, in part, codifies the holding in *Security National Partners Limited Partnership v. Mahler*, 336 N.J. Super. 101, 763 A.2d 804 (App. Div. 2000), which applied a 20-year statute of limitations to a residential mortgage foreclosure action based on a default due to nonpayment. In its decision, the court noted that since there is currently no statute of limitations expressly applicable to mortgage foreclosures in these situations, courts have resolved to drawing analogies to adverse possession statutes which bar rights of entry onto land after 20 years. This bill would resolve the uncertainties surrounding this area of law by providing a specific statute of limitations of 20 years from the date of the default by the debtor.

Cited at N.J.S.A. § 2A:50-56-1.

[applying to notes] is contrary to long settled case law and has no merit." *Mahler*, 336 N.J. Super. at 806.

Finally, even if the Court accepted the Plaintiff's interpretation of the statute, equitable principles do not support a strict application of the statute of limitations to find that the Defendants are time-barred from exercising their foreclosure rights. *See Zaccardi v. Becker*, 88 N.J. 245, 258-59 (1982) (while a limitations period continues to run after a complaint is filed, it should not be mechanistically applied when the purposes of the statute of limitations are not served). The Supreme Court of New Jersey has noted that the purpose of a statute of limitations is to ensure defendants a fair opportunity to defend against claims, to prevent parties from sitting on their rights, and to promote repose. *See Gantes v. Kason Corp.*, 145 N.J. 478, 486 (1996) (quoting *Rivera v. Prudential Property & Casualty Ins. Co.*, 104 N.J. 32, 39 (1986)). Here, the Defendants promptly brought the Foreclosure Action shortly after the Mortgagors defaulted and have not sat on their rights. The Mortgagors have been on constant notice of the Foreclosure Action and have pursued loan modifications in order to save the Property from foreclosure for nearly seven years. Thus, the purposes of the statute of limitations are not served by a strict application in this case.

Accordingly, Count One of the Complaint is dismissed.

### C. Count Two: Negligent Misrepresentation

The Complaint asserts that the Defendants made negligent misrepresentations by failing to inform the Mortgagors that they were not eligible for the 2009 Loan Modification or the 2011 Loan Modification due to their having entered into the 2008 Loan Modification (and then

defaulting). The elements of a claim for negligent misrepresentation are that "the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his reliance caused a loss or injury." *Masone v. Levine*, 382 N.J. Super. 181, 187, 887 A.2d 1191, 1195 (App. Div. 2005) (citing *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109, 754 A.2d 1188, 1195 (2000)). The Court is not aware of any cases applying a negligent misrepresentation theory of liability in the context of a loan modification.

Count Two of the Complaint relies on the general allegation that the Plaintiff "expended considerable costs and fees over an eighteen (18) month period based upon misrepresentations that Plaintiff may be eligible for a loan modification." (Compl. at ¶ 36). The Complaint suggests that the statement by the Defendants that the Plaintiff "may be eligible for a loan modification" constituted an incorrect statement of a past or existing fact that Plaintiff justifiably relied on and suffered damages as a result.

The Complaint's criticism with respect to the failure of the Defendants to inform the Mortgagors that they did not qualify for the 2009 Loan Modification or 2011 Loan Modification because of the 2008 Loan Modification (and subsequent default) is fair. If there was no way that the Mortgagors would ever qualify for another loan modification with respect to the Property after the 2008 Loan Modification was executed, it would have been better if the Defendants had set forth this position promptly and consistently. Another example of inconsistent conduct by the Defendants in the settlement process is the fact that the Defendants were apparently willing to enter into a Forbearance Agreement with respect to the Property in December 2010, a situation that would not seem possible if the Defendants strictly adhered to the principle "Investor guidelines allow capitalization only once in the life of the Loan." (Compl. at ¶¶ 26, 32). Thus,

throughout the history of this relationship, the Defendants did not appear to apply their settlement criteria, to the extent they had any, in a uniform fashion.

Nevertheless, as set forth above, the Court is not aware of any precedent for holding a lender liable for negligent statements or omissions made during the course of a loan modification review. By submitting the applications for loan modifications and engaging in state court foreclosure mediation, the Mortgagors attempted to convince the Defendants to suspend the exercise of their foreclosure rights in favor of a consensual resolution that would address the Loan delinquencies. In this regard, the 2009 Loan Modification and 2011 Loan Modification constituted formalized settlement negotiations in which the parties attempted, but were not required, to reach a mutually agreeable restructuring of the Plaintiff's Mortgage obligations. In this setting, the Defendants' only obligation was to evaluate the Mortgagors' proposals in good faith. Although it is not clear whether the New Jersey Foreclosure Mediation program imposes a good faith requirement,[6] the Bankruptcy Court for the District of New Jersey's Loss Mitigation Program requires that the parties act in good faith. If a lender does not uphold its duty to evaluate the homeowner's application in good faith, sanctions may be available as a remedy. *See* Loss Mitigation Programs and Procedures, VII § A ("The Loss Mitigation Parties shall negotiate in good faith. A party that fails to participate in loss mitigation in good faith may be subject to sanction."); *In re Doble*, No. 13-22909-ABA, 2014 WL 6955350 (Bankr. D.N.J. Oct. 2, 2014). Here, however, the Plaintiff does not allege that the Defendants failed to consider the applications in good faith. Count Two is limited to a negligent misrepresentation claim.

---

[6] *See* Administrative Office of the Courts, *New Jersey Foreclosure Mediation* (2014), *available at* https://www.judiciary.state.nj.us/civil/foreclosure/11290_foreclosure_med_info.pdf.

In similar contexts, courts have declined to recognize negligent misrepresentation claims arising out of a lender's alleged breach of duty during the loan modification process. *See Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (dismissing mortgagor's negligent misrepresentation claim because a lender's obligation to review a loan modification application under the Federal Home Affordable Modification Program (HAMP) "does not create the 'special circumstances' required to form a tort duty under Maryland law"); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573-74 (7th Cir. 2012) (holding that economic loss doctrine [which bars recovery in tort for purely economic losses arising out of a contract] required dismissal of mortgagor's negligent misrepresentation claim against servicer because any duties the servicer may have had to "provide accurate information to [the Plaintiff] arose directly from their commercial and contractual relationship" and therefore "do not sound in the torts of negligent misrepresentation or negligent concealment").[7] Based on these cases, it is hard to imagine any situation where a mortgagee or its representative would be liable to a borrower for mere negligent misrepresentations made in the context of loan modification discussions.

Finally, it is worth noting that the Plaintiff's damages consist solely of the "costs and fees" he incurred while pursuing the loan modifications. Any costs and expenses incurred by the Plaintiff would certainly be exceeded by the damages of the Defendants, who have not received principal or interest payments on the Loan for most of the seven years that have transpired since

[7] New Jersey recognizes the economic loss doctrine and courts have held that it bars claims against a servicer for the negligent servicing of a mortgage. *See Skypala v. Mortgage Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009) (economic loss doctrine barred mortgagor's negligence claim against servicer for alleged improper charges and fees because the "mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort") (citing *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316–17, 788 A.2d 268 (2002)).

the Mortgagors filed their bankruptcy petition in December 2008. (*See* 2015 Bankruptcy Case, Claim No. 6-1). Accordingly, Count Two of the Complaint is dismissed.

**III. Conclusion**

The Plaintiff's Complaint fails to state a claim for relief under N.J.S.A. § 2A:50-56.1 or for negligent misrepresentation. An Order in conformance with this Opinion will be entered.

Very truly yours,

s/ *John K. Sherwood*

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE